# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**CHARLES GABBY,**
    **Plaintiff,**

  **v.**           **Case No. 05-C-0188**

**DR. LUY, SHARI HEINZ,**
**SUE McMURRY and**
**WARDEN THOMAS BORGEN,**
    **Defendants.**

## <u>DECISION AND ORDER</u>

Plaintiff, Charles Gabby, a state prisoner at all times relevant, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983.[1]  Before me is defendants' motion for summary judgment.

## I. BACKGROUND

On February 16, 2005, plaintiff filed a § 1983 complaint alleging that defendants Dr. Enrique Luy, Shari Heinz, Sue McMurry and Thomas Borgen violated his constitutional rights.  By order dated April 29, 2005, plaintiff was granted leave to proceed in forma pauperis on claims that defendants violated his rights under the Eighth Amendment, the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) by discontinuing a nutritional supplement he used following his throat surgeries.  Defendants' motion to dismiss the claims set forth in plaintiff's Inmate Complaint Number FLCI-2004-30533 for failure to exhaust administrative remedies was granted on January 23, 2006.  However, defendants'

---

[1]Jurisdiction is exercised under 28 U.S.C. § 1331 because the court has been presented with claims arising under § 1983, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12102 <u>et seq.</u>, and the Rehabilitation Act of 1973, 29 U.S.C. § § 701 <u>et seq.</u>

motion to dismiss the claims raised in Inmate Complaint Number FLCI-2004-31666 was denied. On October 4, 2006, defendants filed a motion for summary judgment on the remaining claims, which is now fully briefed and ready for resolution.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the

2

nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 323-24. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

### III. FACTS[2]

Plaintiff, a state prisoner, was incarcerated at Fox Lake Correctional Institution (FLCI) at all times relevant. Defendants Dr. Enrique Luy, Shari Heinz, Sue McMurry and Thomas Borgen were employed by the Wisconsin Department of Corrections (DOC) at FLCI when the alleged wrongdoing occurred.

Defendant Dr. Luy is employed as a physician at FLCI. In his capacity as a physician, defendant Dr. Luy has the duties and responsibilities of attending to the medical needs of inmates, diagnosing and treating illnesses and injuries, and arranging for professional consultation when necessary. In addition, defendant Dr. Luy assists in the development of treatment protocols and patient flow charts.

---

[2]The facts in this section are derived from defendants' proposed findings of fact, defendants' affidavits, and plaintiff's verified complaint, to the extent they are undisputed.

3

Defendant Shari Heinz was employed as the Health Services (HSU) Manager from December 30, 2001, to August 20, 2005. In her capacity as HSU Manager, defendant Heinz's responsibilities included monitoring the delivery of all medical services and providing administrative support to physicians and staff. Defendant Heinz was also a custodian of medical treatment records for FLCI inmates.

Defendant Sue McMurry has been employed as a staff nurse since March, 2001. As a nurse, defendant McMurry is responsible for performing nursing assessments for inmates, administering medications and other health treatments pursuant to the orders of physicians, and maintaining inmate medical records.

Defendant Thomas Borgen was employed as the Warden of FLCI from June, 2000, to January, 2005. In his capacity as Warden, defendant Borgen had the duties and responsibilities defined in the Wisconsin Statutes and the Wisconsin Administrative Code. Included among his duties as Warden, defendant Borgen was responsible for the overall operation and administration of the institution, including the formation of institution policies and procedures.

Plaintiff, who has been treated for throat cancer, has been receiving "the food protein supplement, RESOURCE, since his first operation on December 4, 2000." Compl. at 6. The supplement was recommended by a physician at the University of Wisconsin Hospital in Madison. Following reconstructive surgery, plaintiff's throat passage was only about 10% of its original size, making it difficult to "get food and liquids from his mouth down to his stomach." Id. at 9. Therefore, plaintiff was supplied with Resource "for necessary nutritional purposes" during the times relevant to this action. Id.

4

Prior to September 9, 2004, plaintiff was permitted to take Resource up to five times per day. According to plaintiff, the "supplement was stopped" for about two weeks in December 2002. Id. at 10. At that time, plaintiff contacted defendant McMurry, who stated that she would inform defendants Dr. Luy and Heinz about plaintiff's need for the supplement. Thus, defendants Dr. Luy and Heinz were "fully aware of all the difficulties the plaintiff has consuming different food groups." Id.

On September 10, 2004, Nurse Cihlar measured plaintiff's height and weight to determine his body mass index (BMI).[3] Plaintiff's height was measured as 6 feet and his weight as 215 pounds. Using a standard BMI chart, Nurse Cihlar calculated plaintiff's BMI as 29.

A BMI of 29 indicates that a person is obese or on the verge of becoming obese. People who are overweight or obese have an elevated risk of developing certain medical problems such as high blood pressure, high blood cholesterol, type 2 diabetes, heart disease, stroke and certain cancers.

Nurse Cihlar noted in plaintiff's Progress Notes that, because his high BMI put him at an elevated risk, his Resource prescription should be stopped. Defendant Dr. Luy, who also did not believe that it was medically necessary or appropriate to continue prescribing plaintiff a supplement that increased his caloric protein intake when he was obese or on the verge of becoming obese, countersigned Nurse Cihlar's order to stop providing plaintiff with Resource.

─────────────────────

[3]A BMI is a reliable measure of body fat for adults based on height and weight. (Luy Aff. ¶18; Ex. 102).

5

On September, 14, 2004, plaintiff received an unsigned notice of the cancellation, which failed to explain why his Resource prescription was discontinued. Plaintiff wrote to defendant McMurry the same day asking her to investigate and reconsider the cancellation of the supplement given his inability "to eat some foods (as in meats) that have the protein his body requires to keep up the antibodies necessary to fight the possibilities [sic] of cancer returning." Id. at 10-11.

On September 20, 2004, plaintiff sent another request "addressed to Sue McMurry or Shari Heinz." Id. at 12. In his request, plaintiff reiterated his earlier points and noted that changes in the prison's food service had cut his milk supply, thus decreasing his protein intake from 85 grams to 30 grams daily. Plaintiff filed an inmate complaint concerning the discontinuation of his supplement on September 24, 2004, and he filed additional requests and inmate complaints in September and October 2004.

On or about October 7, 2004, plaintiff was notified that his September 2004 inmate complaint was dismissed because his high BMI indicated that the Resource supplement was no longer necessary. The decision further indicated that the HSU would monitor plaintiff and respond accordingly. Plaintiff states that until October 27, 2004, however, he was not monitored "for weight or anything else." Id. at 15. Moreover, he notes that at some point during his prescribed consumption of Resource he actually weighed significantly more than he did at the time defendants terminated his supply of the supplement because of the high BMI.

In the absence of the supplement, plaintiff states he "is unable to get down more than 30-50% of the [prison meal] portions before his throat hurts and he is exhausted to the point where he cannot do anything else but lay down and recouperate [sic]." Id. at 14. Plaintiff

6

states that he is able to purchase some supplies from the prison canteen, including a protein powder, amino acids and vitamin C. However, "these purchases, alone, are simply not enough to meet plaintiff's necessary protein needs." Id. at 16.

On October 28, 2004, defendant McMurry evaluated plaintiff. Although plaintiff's weight had maintained at 214 pounds, he complained of fatigue and requested that his Resource prescription be resumed because he was unable to swallow meat or any tougher food. Because plaintiff tried a regular diet for over one month and complained that he was having difficulty eating certain foods, defendants McMurry, Heinz and Dr. Luy agreed that plaintiff might not be able to maintain a nutritionally adequate protein or caloric level through a regular diet and that, therefore, he should resume taking Resource. However, in light of his high BMI and corresponding elevated risk for developing certain medical problems, defendants Dr. Luy and McMurry decided that plaintiff should receive only two cans of Resource per day.

Plaintiff claims that defendants Luy, McMurry, and Heinz were deliberately indifferent to his medical "need to maintain nutritional levels in order to halt or substantially lessen pain from having to force protein enriched foods, physically exhausting to the plaintiff, to consume." Id. at 17-18. Plaintiff states that defendant Warden Thomas Borgen is responsible for all inmates at the prison and that all inmate complaints "pass over defendant Borgen's desk for his final signature." Id. at 18-19. Thus, defendant Borgen "certainly was aware of both plaintiff's medical condition and problem" and was deliberately indifferent. Id. at 19.

7

## IV. DISCUSSION

Plaintiff's claims rest on allegations that defendants violated his rights under the Eighth Amendment, the ADA, and the RA. I will first address the Eighth Amendment claims, followed by the ADA and RA claims.

**A.  Eighth Amendment Claims**

Plaintiff claims that defendants Dr. Luy, Sue McMurry, Shari Heinz and Warden Thomas Borgen were deliberately indifferent to his medical need to obtain appropriate nutrition. To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001)(quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim,

8

provided the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

In the present case, the parties do not dispute that plaintiff experienced a serious medical need. Therefore, the relevant inquiry is whether defendants were deliberately indifferent to this need.

### 1.  Claims Against Dr. Luy

Plaintiff asserts that Dr. Luy stopped the Resource supplement without first determining why it was prescribed. Additionally, plaintiff contends that Dr. Luy did not review his medical history or arrange to meet with him prior to discontinuing the supplement. For his part, Dr. Luy submits that the decision to stop the supplement was made out of concern for, and not in spite of, plaintiff's health.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence or even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). Rather, a finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman, 241 F.3d at 845 (citing Farmer, 511 U.S. at 840-42).

In the present case, plaintiff started receiving the Resource supplement after his first throat operation in December, 2000, because it was difficult for him to eat and drink. It is undisputed that in September, 2004 plaintiff had a BMI of 29, which indicated that he was

9

obese and at an elevated risk of developing certain medical problems such as high blood pressure, high blood cholesterol, type 2 diabetes, heart disease, stroke and certain cancers. As a result, Dr. Luy determined that the supplement, which aids in caloric and protein intake, should be discontinued.

Plaintiff believes that his nutritional needs superceded the dangers associated with an elevated BMI and, therefore, his Resource supplement should not have been discontinued. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). Simply put, "[m]edical decisions that may be characterized as classic examples of medical judgment, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview." Snipes, 95 F.3d at 591. Moreover, mere disagreement with a doctor's medical judgment does not constitute deliberate indifference. Edwards, 478 F.3d at 831.

In the present case, plaintiff does not dispute that his BMI categorized him as obese, or on the verge of becoming obese, and put him at an increased risk of developing several medical complications. However, he contends that Dr. Luy erred when he failed to review his medical records and failed to meet with plaintiff prior to stopping the supplement. Other than a blanket assertion, plaintiff has submitted no admissible evidence that Dr. Luy did not review his medical records when making this decision. Moreover, plaintiff has produced no admissible evidence that his nutritional needs were not met when during the six weeks he was not provided with the Resource supplement. Indeed, during this time period plaintiff

10

maintained his weight at approximately 214 pounds. For these reasons, the admissible evidence of file does not support a finding that defendant Dr. Luy's treatment decision was blatantly inappropriate or aggravated plaintiff's medical condition. See Edwards, 478 F.3d at 831.

To the extent Dr. Luy's decision to stop the Resource supplement was medically erroneous, a mistake in a medical judgment, without more, cannot be characterized as disregard for an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. That is, "allegations of 'inadvertent failure to provide adequate medical care', or of a 'negligent . . . diagnos[is]', simply fail to establish the requisite culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105 & 106 (holding that the Eighth Amendment is not a vehicle for bringing claims for medical malpractice)); see also Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994) (stating that ordinary malpractice is not cruel and unusual punishment); Sivard v. Pulaski County, 959 F.2d 662 (7th Cir. 1992) (holding that simple malpractice does not create a claim for relief under the Eighth Amendment).

Similarly, any wrongdoing on behalf of Dr. Luy that can be attributed to negligence also fails under the Eighth Amendment because deliberate indifference is not negligence, nor is it gross negligence. Haley v. Gross, 86 F.3d 630, 644 (7th Cir.1996); Thomas v. Farley, 31 F.3d 557, 558 (7th Cir. 1994) (negligence is not actionable in suit under 42 U.S.C. § 1983 complaining about the infliction of cruel and unusual punishment). Instead, deliberate indifference requires a certain culpable mental state comparable to criminal recklessness, Wilson, 501 U.S. at 302, which is not borne out by the evidence on file in this case. For all these reasons, plaintiff's Eighth Amendment claim against Dr. Luy will be dismissed.

11

### 2. Claims Against Sue McMurry and Shari Heinz

Plaintiff alleges that defendants McMurry and Heinz failed to respond to his complaints that he stopped receiving the Resource supplement. I construe this as a claim that defendants should be held liable for plaintiff's alleged inadequate medical care because they failed to intervene to prevent the violation from occurring. While plaintiff is correct that a prison official may satisfy the deliberate indifference requirement by failing to act, there must be an underlying violation of his constitutional rights. Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutional failure to intervene because there was no violation that compelled intervention."). Therefore, absent an underlying Eighth Amendment violation, plaintiff cannot prevail on a failure to intervene claim against defendants McMurry and Heinz. Thus, defendants' motion for summary judgment will be granted as to this claim.

### 3. Claims Against Defendant Warden Borgen

Plaintiff contends that defendant Borgen violated his constitutional rights because he reviewed plaintiff's inmate complaint and failed to take the appropriate action. Review of the file in this case reveals that defendant Borgen affirmed the dismissal of Inmate Complaint Number FLCI-2004-31666 in which plaintiff complained about his Resource supplement being stopped. Borgen found that this complaint merely restated the factual and legal allegations of a previous complaint, which was denied based on the medical records documenting the medical reasons for discontinuing plaintiff's Resource supplement. Thus, on that same basis and because no new grounds were alleged in the Complaint Number 31666, Borgen affirmed the dismissal of the complaint.

12

Simply because an inmate has complained to prison officials about unconstitutional conditions of confinement does not mean, however, that the administrator who reviewed but denied the complaint bears personal responsibility for the alleged conduct. See Perkins v. Lawson, 312 F.3d 872, 875-76 (7th Cir. 2002); see also Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996). Especially in the area of medical care, prison officials who are not physicians themselves are entitled to defer to the medical judgment of staff physicians. Perkins, 312 F. 3d at 875-76. To be sure, an administrator does not become responsible for a medical professional's exercise of medical judgment simply by virtue of reviewing an inmate grievance. See Greeno v. Daley, 414 F.3d 645 (7th Cir. 2005). Because that is all plaintiff alleges here, summary judgment will be granted as to this claim.

**C.     ADA and RA Claims**

Plaintiff charges defendants with violating Title II of the ADA and § 504 of the RA.[4] Since the provisions relevant to this analysis are identical for both the RA claim and the ADA claim, Washington v. Indiana High School Athletic Assoc., 181 F.3d 840, 845 n. 6 (7th Cir. 1999) ("Title II of the ADA was modeled after § 504 of the Rehabilitation Act; the elements of the claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other."), I will confine my analysis to the ADA.

As a preliminary matter, defendants contend that plaintiff's claims must be dismissed because he failed to name a public entity as a defendant. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be

---

[4]The Supreme Court has held that the ADA and the RA apply to prisoners. Pennsylvania Dep't of Corrs. v. Yeskey, 524 U.S. 206 (1998).

13

subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2000 ed.). Review of the complaint reveals that plaintiff has sued defendant Borgen, the FLCI Warden, in his official capacity. A suit against a state official in his or her official capacity is a suit against the official's office and, therefore, it is no different than a suit against the state itself, Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Under the ADA, the term "public entity" means any state or local government. 42 U.S.C. § 12131(1)(A). Therefore, I decline to dismiss plaintiff's ADA and RA claims for failing to name a public entity.

A plaintiff seeking relief under Title II "must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." Kiman v. New Hampshire Dep't of Corrs., 451 F.3d 274, 283 (1st Cir. 2006). A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barrier, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2).

For purposes of summary judgment, there is no dispute that plaintiff is a qualified individual with a disability. Therefore, the relevant inquiry is whether plaintiff was denied medical services on the basis of this disability. Plaintiff, however, does not argue that defendants discriminated against him on the basis of his disability. Inasmuch as plaintiff has not submitted any evidence, let alone made any allegation that defendants discriminated

14

against him on the basis of his disability, his ADA and RA claims are subject to dismissal. However, these claims should be dismissed for another reason.

Plaintiff claims that defendants' failure to provide him with constitutionally adequate medical care translates into ADA and RA violations.[5]  As discussed above in connection with the claims against Dr. Luy, defendants' actions amount at most to a negligent treatment decision.  Courts have differentiated ADA and RA claims based on negligent medical care from those based on discriminatory medical care.  See Fitzgerald v. Corr. Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions...do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.").  And this circuit has expressly concluded that neither the ADA nor the RA provide remedies for medical malpractice. Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for malpractice."); Grzan v. Charter Hospital of Northwest Indiana, 104 F.3d 116, 121, 123 (7th Cir. 1997) (affirming dismissal of section 504 claim because it does not provide a "federal malpractice tort remedy").  Rather, when the decision being challenged is "simply a reasoned medical judgment with which the patient disagreed," it is more appropriate for the patient to turn to state medical malpractice law and not the ADA.  Lesley v. Cite, 250 F.3d 47, 55 (1st Cir. 2001).  For this reason, plaintiff has failed to make out an ADA or RA violation.

## V. CONCLUSION

For the foregoing reasons,

---

[5]Specifically, the complaint alleges, "These acts or omissions are also in conjunction with the violations suffered under the (ADA) Americans with Disabilities Act; and the (RA) Rehabilitation Act, whereby defendant's actions or inactions constitute 'deliberate indifference' to serious medical needs of disabled plaintiff."  (Compl. at 18).

15

**IT IS ORDERED** that defendants' motion for summary judgment (Docket # 29) is

**GRANTED**, and this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21 day of September, 2007.

/s_____
LYNN ADELMAN
District Judge

16